IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JANNET E. HUTCHENS,       *
                          *
    Plaintiff,            *
                          *
        v.                *         CV 213-142
                          *
MAIL CONTRACTORS OF AMERICA, *
INC., d/b/a Salmon Companies, *
PATRICK R. DONOHOE, Postmaster *
General, United States Postal *
Service, and DAMIAN R. RAWSKI, *
Individually and in his    *
Official Capacity as Postmaster, *
Brunswick (Georgia) Station, *
                          *
    Defendants.           *

## O R D E R

In this action, Defendants Patrick Donohoe, Postmaster General of the United States Postal Service ("USPS"), and Damian R. Rawski, Individually and in his Official Capacity as Postmaster of the Brunswick, Georgia Station (collectively, "the USPS Defendants"), move to dismiss Plaintiff Jannet Hutchens' complaint in its entirety. (Doc. 20.) Ms. Hutchens, an employee of a federal contractor, contends the USPS Defendants retaliated against her by revoking her access to USPS facilities after she testified at an administrative hearing on claims of race discrimination against USPS. The USPS Defendants contend this Court lacks subject matter jurisdiction over Ms. Hutchens'

claims and that she has failed to state a claim upon which the Court can grant relief because she has not exhausted her administrative remedies. For the reasons set forth below, the Court **GRANTS** the USPS Defendants' motion to dismiss. (Doc. 20.)

## I. BACKGROUND

This case arises from Ms. Hutchens' employment as a truck driver for Mail Contractors of America, Inc. ("MCA"), a position she has held since March 9, 2000. (Am. Compl., Doc. 11, ¶ 13.) Throughout her tenure, Ms. Hutchens drove 18-wheel tractor-trailers from the USPS facility at St. Simons Island, Georgia, to the USPS facility at Jacksonville, Florida. (Id. ¶ 14.)

On April 5, 2012, Ms. Hutchens testified at an administrative hearing on a USPS employee's claims of race discrimination brought pursuant to Title VII of the Civil Rights Act of 1964. (Id. ¶ 15.) Prior to the hearing, Ms. Hutchens' counsel wrote a letter to her MCA supervisor requesting leave to testify at the hearing. (Id. ¶¶ 16-18 & Ex. 1.) The administrative law judge ultimately rendered a decision in that employee's discrimination action on November 30, 2012. (Id. ¶ 20.)

On November 15, 2012, Ms. Hutchens' supervisor notified her that USPS personnel made a complaint that Ms. Hutchens cursed at

2

another driver. (Id. ¶ 21.) Ms. Hutchens alleges that this complaint is untrue. (Id. ¶ 22.) Ms. Hutchens' MCA supervisor then notified Ms. Hutchens that USPS "pulled" her badge and, therefore, she could no longer drive for MCA, whose only customer is USPS. (Id. ¶¶ 23, 24.) Plaintiff "has not been terminated" by MCA, but has not been allowed to work for MCA since November 15, 2012. (Id. ¶¶ 31, 32.)

On February 15, 2013, USPS wrote a letter stating that it permanently revoked Ms. Hutchens' driver access to all USPS facilities because she pulled a trailer away from the loading dock at the Jacksonville facility while the dock door was still open. (Id. ¶¶ 25, 26.) USPS stated that this action endangered plant personnel who were not aware that the trailer was being moved. (Id. ¶ 26.) The letter also informed Ms. Hutchens of her right to appeal the decision, which had to be completed within five days pursuant to USPS Management Instruction ("MI") PO-530-2009-4, Section 172. (Pl.'s Resp., Doc. 22, Ex. A.) According to Ms. Hutchens, however, the locking mechanism would not have allowed her to pull away from the dock until a postal employee released the locking mechanism on the tandem bumper of the trailer. (Am. Compl. ¶ 27.)

MCA did nothing to intervene on Ms. Hutchens' behalf in response to the accusations made by USPS. (Id. ¶ 34.) Instead, Ms. Hutchens' counsel responded to USPS's letter. (Pl.'s Resp.,

3

Doc. 22, Ex. A.) In her response, Ms. Hutchens notified USPS that she wished to appeal the denial of access, identified two witnesses to verify her compliance with USPS policies on the day in question, and requested a copy of the Management Instruction that outlined the appeal procedure. (Id.) Ms. Hutchens also contacted the president of the American Postal Workers Union ("APWU"), of which she was a member, for assistance in filing an administrative claim. (Pl.'s Resp. at 6.) She apparently received no response from USPS or APWU. (Id.)

Thereafter, within the required 180 days, Ms. Hutchens filed a charge of retaliation with the Equal Employment Opportunity Commission ("EEOC"). (Am. Compl. ¶ 10.) Ms. Hutchens asserts that "the EEOC did not investigate or pursue [her] charge of retaliation against the USPS," but only as against her employer, MCA. (Pl.'s Resp. at 6.) Indeed, on June 28, 2013, the EEOC issued Ms. Hutchens a Notice of Right to Sue, with the only identified responding party being the Salmon Companies, MCA's parent. (Doc. 1, Ex. A.) Ms. Hutchens has not filed any administrative claims of employment discrimination or tort claims against USPS. (Defs.' Br., Doc. 20, Ex. A ("Beatty Decl."), ¶¶ 2, 4 & Ex. B ("Pagan Decl."), ¶ 7.)

On January 17, 2014, MCA moved to dismiss Ms. Hutchens' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), which it renewed on February 21, 2014 after Ms. Hutchens amended

her complaint. (Docs. 6, 11.) As to MCA, the Court ultimately found that Ms. Hutchens' allegations failed to show any causal connection between her protected activity and being placed on leave. (Doc. 28.) The fact that USPS — not MCA — permanently revoked her access to USPS facilities, combined with the seven-month delay between Ms. Hutchens' protected testimony and her placement on leave by MCA, was insufficient to establish causation, and the retaliation claim against MCA thus failed as a matter of law. (Id. at 6, 7.)

## II. DISCUSSION

Now, in moving to dismiss all Ms. Hutchens' claims, the USPS Defendants posit that this Court lacks subject matter jurisdiction because Ms. Hutchens is not an "employee" of USPS as a federal contractor, and thus she cannot overcome USPS's sovereign immunity by way of Title VII, which only creates liability by a federal agency as to "employees and applicants for employment."[1]

---

[1] The USPS Defendants cite Rouse v. Green, 359 F. App'x 856 (11th Cir. 2010) (per curiam), for the proposition that a federal contractor cannot sustain a claim at all under Title VII in this Circuit. Based on that opinion's sparse analysis, however, the holding in Rouse appears to be limited to those contract relationships whereby a statute expressly defines the situations in which the contractor is considered an "employee," for example, for limited purposes of the Federal Employees Compensation Act or Federal Tort Claims Act. 359 F. App'x at 857-58. The parties do not identify any such controlling statute(s) here. In most other cases, for Title VII purposes, "the Eleventh Circuit (and virtually every other federal circuit) applies the hybrid 'economic realities' test — a test that takes into account both the economic realities of the employment relationship and traditional common-law agency principles, including the employer's 'right to

5

42 U.S.C. § 2000e-16(c). The Court, however, finds that a determination of whether Ms. Hutchens was an "employee" of USPS for Title VII purposes is not necessary because Ms. Hutchens' failure to seek the appropriate EEO counseling within the required forty-five days after the alleged discriminatory act is grounds for dismissal. The Court addresses the administrative exhaustion requirement, as well as Ms. Hutchens' state law claims, in turn.

A. **Failure to Exhaust Administrative Remedies**

Eleventh Circuit courts have subject-matter jurisdiction over Title VII claims only if the plaintiff "pursue[d] and exhaust[ed] her administrative remedies," that is, "made a good faith effort to comply with the [EEOC] regulations and, particularly, to provide all the relevant, specific information available." Crawford v. Babbit, 186 F.3d 1322, 1326 (11th Cir. 1999); Wade v. Sec'y of Army, 796 F.2d 1369, 1376 (11th Cir. 1986). A Title VII plaintiff "cannot be deemed to have exhausted administrative remedies" unless she provides the

---

control and direct the work of an individual, not only as to the results to be achieved, but also as to the details by which that result is achieved'" to determine whether an individual is an "employee" or an independent contractor. Moody v. Coliseum Psychiatric Ctr., LLC, No. 5:04-CV-364 (DF), 2006 WL 1652281, at *6 (M.D. Ga. June 12, 2006) (emphasis added) (citing Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1234 (11th Cir. 2004) and Cobb v. Sun Papers, Inc., 673 F.2d 337 (11th Cir. 1982)). The Court's own research reveals that the D.C. Circuit applies the "economic realities test" in cases arising under Title VII's federal sector provision, but the Court has found no case in which the Eleventh Circuit has done the same. See, e.g., Spirides v. Reinhardt, 613 F.2d 826 (D.C. Cir. 1979).

6

agency with the information needed to evaluate the merits of her claim. Id. "This requirement is not a technicality[.]" Grier v. Sec'y of Army, 799 F.2d 721, 724 (11th Cir. 1986) (quotations omitted). Thus, "[g]enerally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies." Id. "After all, an employee who fails to allege or adduce any evidence (after receiving an opportunity to do so) that she initiated the administrative-review process within forty-five days and who offers no reasonable explanation for why she skipped administrative steps cannot be deemed to have made 'a good-faith effort to comply with the pertinent regulations and timely seek administrative remedies.'" Bloodworth v. Colvin, No. 1:12-CV-1851-TCB, 2014 WL 1711794, at *3 (N.D. Ga. Jan. 15, 2014) (quoting Rueda-Rojas v. United States, 477 F. App'x 636, 637 (11th Cir. 2012)).

"To be clear: timely contact with an EEO counselor is not a jurisdictional prerequisite." Id. (citing Ramirez v. Sec'y, U.S. Dep't of Transp., 686 F.3d 1239, 1243 (11th Cir. 2012)). Rather, administrative exhaustion is a condition precedent to bringing a discrimination action in federal court. See, e.g., Myers v. Cent. Fla. Invs., Inc., 592 F.3d 1201, 1223-24 (11th Cir. 2010) (noting that in some circumstances sexual harassment suits may proceed even though the plaintiff did not file an EEOC

7

complaint); Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1000-10 (11th Cir. 1982) (holding that all conditions precedent to a Title VII action are not jurisdictional prerequisites); Goodridge v. Astrue, No. 1:07-CV-1918, 2008 WL 8691093, at *1-2 (N.D. Ga. Mar. 20, 2008).

As a condition precedent, the Supreme Court has noted that the EEOC procedural requirements are "like a statute of limitations, [and thus] subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Canaday v. Wynne, No. 5:09-CV-8, 2010 WL 1957512, at *4 (N.D. Fla. Apr. 29, 2010), R&R adopted, 2010 WL 1957505 (N.D. Fla. May 14, 2010). In this Circuit, a plaintiff's failure to exhaust can be excused in three situations: "situations in which an action was pending before a state court, situations in which the defendant had concealed facts supporting a cause of action under Title VII, and situations in which the plaintiff was misl[e]d by the defendant about the nature of his rights under Title VII." Manning v. Carlin, 786 F.2d 1108, 1109 (11th Cir. 1986) (citing Chappell v. Emco Mach. Works Co., 601 F.2d 1295, 1302-03 (5th Cir. 1979)); see also Blumberg v. HCA Mgmt. Co., 848 F.2d 642, 644 (5th Cir. 1988) (following Chappell and discussing "three possible bases for tolling"). But if none of these situations are involved,

the suit may be dismissed for failure to exhaust. Manning, 786 F.2d at 1109.

In testing the legal sufficiency of a Title VII complaint at the motion to dismiss stage, the Court, therefore, must examine whether the plaintiff included a "short and plain statement of the ground for the court's jurisdiction" in light of the precedent exhaustion condition described above. FED. R. CIV. P. 8(a)(1). The complaint must contain sufficient factual matter, accepted as true, to establish a good-faith effort to comply with the EEO regulations. Bloodworth, 2014 WL 171194, at *4. Once a defendant has specifically and with particularity raised the exhaustion issue in a motion to dismiss, the plaintiff bears the burden of proving that the condition precedent has been satisfied. Jackson, 678 F.2d at 1010; Scott v. City of Brunswick, No. 2:11-CV-119, 2012 WL 2562422, at *4 (S.D. Ga. June 29, 2012).

Here, the USPS Defendants' motion to dismiss for failure to exhaust administrative remedies specifically challenges whether Ms. Hutchens satisfied the condition precedent to the suit against them. (Defs.' Br. at 11-13.) Thus, as outlined in Bloodworth, in deciding this motion the first inquiry is whether Ms. Hutchens made a good faith effort to comply with the EEO regulations and whether USPS had an opportunity to resolve the issue informally. 2014 WL 171194, at *5. The next inquiry is

whether Ms. Hutchens satisfied the condition precedent to the suit, and if not, whether her failure to do so can be excused. Id.

### 1. *Ms. Hutchens' Compliance Efforts & USPS's Opportunity for Response*

Ms. Hutchens does not plead that she made *any* contact with USPS's EEO representatives. (See Am. Compl. at 3-4 (outlining "Administrative Proceedings"); Pl.'s Resp. at 6.) Nor does the record reveal that Ms. Hutchens ever contacted a USPS EEO counselor about her retaliation claim. (Beatty Decl. ¶ 2; Pagan Decl. ¶ 7.) The contact she did attempt to make with (1) the USPS Contracting Officer, in which she merely expressed intent to appeal the loss of her access credentials, and (2) her union representative is insufficient under the plain language of the governing administrative regulation. See 29 C.F.R. § 1614.105(a)(1) (mandating that an aggrieved person must initiate contact with a *counselor*). Nor do the two instances of attempted contact fulfill the exhaustion requirement's overarching purpose: "to give *the agency* the information it needs to investigate and resolve the dispute between the employee and the employer." Wade, 796 F.2d at 1377 (emphasis added). Thus, based on the record, it appears that USPS's first opportunity to address and resolve Ms. Hutchens' allegations of retaliation was this lawsuit.

## 2. *Excuse of Ms. Hutchens' Failure to Comply*

Ms. Hutchens' only defense is that she "could not avail herself of [the USPS EEO] procedures because she was not a federal employee." (Pl.'s Resp. at 6.) She provides no legal authority, however, to support her theory that her status as a federal contractor provides her with an "escape hatch" from the exhaustion requirement. Frank v. England, 313 F. Supp. 2d 532, 536-37 (D. Md. 2004); see also Gray v. LaHood, 917 F. Supp. 2d 120, 123 (D.C. Cir. 2013) (noting that Federal Aviation Administration contractor filed two EEO complaints against the Department of Transportation pre-suit); Spirides v. Reinhardt, 613 F.2d 826, 828 (D.C. Cir. 1979) (noting that intermittent employee of the United State International Communication Agency ("USICA") exhausted her administrative remedies after filing a formal complaint with USICA's EEO office and two appeals with the Review Board). She makes no argument that the circumstances of her case fall into any one of the three categories this Circuit has recognized as warranting relief from the exhaustion requirement. See Manning, 786 F.2d at 1109. If Ms. Hutchens wishes to invoke Title VII's protections, she must also accept the responsibilities of Title VII litigants. The EEOC's own guidance suggests as much.

In 1997, the EEOC issued a policy statement addressing the steps a "temporary, contract, or other contingent employee" who

11

believes he has been discriminated against should take when pursuing a discrimination complaint against the federal sector. U.S. EEOC, NOTICE 915.002, ENFORCEMENT GUIDANCE: APPLICATION OF EEO LAWS TO CONTINGENT WORKERS PLACED BY TEMPORARY EMPLOYMENT AGENCIES AND OTHER STAFFING FIRMS 1 (1997). The guidance proves as follows:

> If the staffing firm worker seeks to pursue a complaint against the federal agency as his or her employer, (s)he should contact an EEO Counselor at the federal agency within 45 days of the date of the alleged discrimination. If the individual also seeks to pursue a claim against the staffing firm, (s)he should file a separate charge with an EEOC field office. In such circumstances, the EEOC investigator should alert the individual as to the different time frames and procedures in the federal and private sectors. The investigator should also contact the EEO office of the federal agency once the individual files the federal sector complaint in order to coordinate the federal and private sector investigation.

Id. at 21 (footnotes omitted). Footnote 35 elaborates that "[i]f the federal agency refuses to accept the complaint based on a belief staffing firm worker is not its employee, the worker can file an appeal with the Commission's Office of Federal Operations." (Id.)

Although EEOC guidance is not binding on this Court, it is nevertheless instructive and makes clear that Ms. Hutchens had an obligation, at minimum, to attempt to contact USPS's EEO representatives. At that point, if USPS or its EEO counselors hampered Ms. Hutchens' efforts or misled her about when or where she needed to file a claim, the Court would not be required to

find that she failed to comply with the exhaustion requirements. See Wade, 796 F.2d at 1377. But a claimant must "[do] all he or she could *reasonably* be expected to do to comply with the regulations." Id. (emphasis added); see also Hoffman v. Boeing, 596 F.2d 683, 685 (5th Cir. 1979)[2] (explaining that a "claimant's subjective belief that resort to the administrative process would have been ineffectual does not excuse his failure even to attempt that remedy") (citing League of United Latin Am. Citizens v. Hampton, 501 F.2d 843, 846 (D.C. Cir. 1974) (per curiam)). Ms. Hutchens failure to do so here is fatal to her claim, and accordingly, it will be dismissed.

### B. Tortious Interference with the Right to Work under State Law

In seeking to state a tortious interference claim, Ms. Hutchens alleges that the USPS Defendants "intentionally and maliciously took action against [her] and revoked her driver access to USPS facilities," with the knowledge that such action "would effectively cause her to be unable to work for her employer." (Am. Compl. ¶¶ 41, 42, 46, 47.) The Supreme Court has held that Title VII is the "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." Brown v. Gen. Servs. Admin., 425

---

[2] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in Eleventh Circuit).

13

U.S. 820, 829 (1976). Since Brown, courts have strived to delimit the preemptive effect of Title VII over various state law claims. Some courts have allowed state law claims to stand *if they seek to remedy injuries other than workplace discrimination.* See, e.g., Quillen v. United States Postal Serv., 564 F. Supp. 314 (E.D. Mich. 1983) (refusing to dismiss assault and battery claim); cf. Mathis v. Henderson, 243 F.3d 446, 450-51 (8th Cir. 2001); Pfau v. Reed, 125 F.3d 927, 932-33 (5th Cir. 1997) ("When the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts the non-Title VII claim."), vacated and remanded on other grounds, 525 U.S. 801 (1998), pertinent holding reinstated, 167 F.3d 228, 229 (5th Cir. 1999); Mathirampuzha v. Potter, 371 F.Supp.2d 159, 162 n. 1 (D. Conn. 2005) (collecting federal cases where courts have held that Title VII preempts state law employment discrimination claims brought by federal employees). But "the Eleventh Circuit . . . has not addressed the issue of Title VII's preemptive reach." Roland v. Potter, 366 F. Supp. 2d 1233, 1235 (S.D. Ga. 2005)(Bowen, J.); see also Combs v. Potter, No. 7:05-CV-68 (HL), 2006 WL 1344855, at *2 (M.D. Ga. May 15, 2006).

In Combs, our sister court relied on the Honorable Dudley H. Bowen, Jr.'s analysis in Roland to dismiss a tortious interference claim that arose out of the plaintiff's employment

14

with USPS. Combs, 2006 WL 1344855, at *2. There, the plaintiff alleged that her supervisors discriminated against her based on race and retaliated against her for participation in prior protected activity when they refused to select her for a mail carrier position. Combs, 2006 WL 1344855, at *1. The Combs Court noted that the plaintiff's "state law claims simply allege[d] that, as a result of the same actions she argues constitute violations of Title VII . . . , she has suffered emotional distress and tortious interference." Id. at *3. As the plaintiff "assert[ed] no facts to support her state law claim that [were] different from the facts that support[ed] her employment discrimination claim," the Court found her tortious interference claim to be, at bottom, a claim for discrimination by her supervisors that Title VII alone was meant to address. Id.

This Court finds the Combs decision persuasive, and thus likewise holds that Title VII preempts Ms. Hutchens' state law claims of tortious interference against the USPS Defendants. Combs, 2006 WL 1344855, at *3. Ms. Hutchens asserts no distinct facts in support of her tortious interference claims.[3] Instead,

---

[3] To the extent Ms. Hutchens grounds her tortious interference claim on USPS's failure to respond to her counsel's letter expressing intent to appeal the revocation of Ms. Hutchens' access credentials (Pl.'s Resp. at 6), the Court finds such facts insufficient to state a claim as a matter of law. First, to state a claim for tortious interference with employment under Georgia law, a plaintiff must allege (1) the existence of an employment relationship; (2) interference by one who is a "stranger" to the relationship; and (3) resulting damage to the employment relationship. Lee

15

her complaint alleges simply that, as a result of engaging in protected activity, the USPS Defendants "intentionally and maliciously took action against [her] and revoked her driver access to USPS facilities." (Am. Compl. ¶¶ 41, 46.) Plainly, this is "wholly derivative from the alleged conduct giving her to her Title VII claims." Combs, 2006 WL 1344855, at *3 (citing Chergosky v. Hodges, 975 F. Supp. 799, 801 (E.D.N.C. 1997) and Mathis, 243 F.3d at 446 ("We are unwilling — and under Brown unable — to give plaintiff carte blanche to creatively plead as many state-law causes of action as she believes she may sustain against her supervisor, in addition to her Title VII claim, when, at bottom, her claim is for [discrimination] by a supervisor, for which the government already stands [potentially] liable under Title VII.")). As such, Ms.

---

v. Caterpillar, Inc., 496 F. App'x 914, 915 (11th Cir. 2012). USPS's nonfeasance in no way constitutes "interference." The letter terminating Ms. Hutchens' access informed her of her right to appeal and the procedures under which such an appeal must proceed. MI PO-530-2009-4, Section 172 sets forth that the right to appeal inured *to Ms. Hutchens' employer.* (Pl.'s Resp., Ex. A.) As Ms. Hutchens' counsel — not MCA — responded to USPS's letter, it appears that USPS had no duty to respond or to move forward with the appeal. Ms. Hutchens or her counsel easily could have searched for and retrieved MI PO-530-2009-4 on the internet, which would have been prudent given the incredibly short window during which USPS grants its contractors the right to appeal adverse decisions made by the Contracting Officer. More importantly, USPS is not a "stranger" to Ms. Hutchens' contract with MCA. See Atlanta Mkt. Ctr. Mgmt., Co. v. McLane, 503 S.E.2d 278, 283 (Ga. 1998) ("[I]n order for a defendant to be liable for tortious interference with contractual relations, the defendant must be a stranger to both the contract *and* the business relationship giving rise to and underpinning the contract.")

Hutchens' state law tortious interference claims against the USPS Defendants must be dismissed.[4]

## III. CONCLUSION

For the reasons set forth above,[5] the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Amended Complaint (Doc. 20), and Plaintiff's retaliation and state law tortious interference claim against USPS are **DISMISSED WITH PREJUDICE**. Plaintiff's request for leave to amend her complaint to add an FTCA claim is **DENIED** as premature given her as-yet-unfulfilled administrative obligations. The **CLERK** shall terminate all deadlines and **CLOSE** this case.

---

[4] A claim for tortious interference is theoretically permissible under the Federal Tort Claims Act ("FTCA"). Ms. Hutchens does not explicitly invoke the FTCA in her pleadings, but instead requests leave in her brief to amend her complaint to add such a claim. (Pl.'s Resp. at 12.) The USPS Defendants emphasize that Ms. Hutchens has not engaged in the requisite administrative process such that amendment would be futile. The Court agrees. Under the FTCA,

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency* and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a) (emphasis added). Ms. Hutchens does not assert in her pleadings or brief that she filed an administrative tort claim with USPS. Nor does the record reflect that she has. (Beatty Decl. ¶ 2.) Thus, to the extent Ms. Hutchens intends to assert a FTCA claim in this pleading or another, she does so prematurely and the Court lacks jurisdiction to hear it. Her request for leave to amend the complaint, therefore, is hereby **DENIED**.

[5] As the Court finds Ms. Hutchens' failure to exhaust her administrative remedies dispositive as to both her Title VII claim and potential FTCA claim, it will not address the USPS Defendants' alternative grounds for dismissal.

**ORDER ENTERED** at Augusta, Georgia, this ___13th___ day of November, 2014.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA